# THOS. CORBALIS v. TOWNSHIP OF NEWBERRY.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF YORK COUNTY.

Argued May 22, 1889—Decided January 6, 1890.

[To be reported.]

1. In the consideration of a motion for a compulsory nonsuit, the plaintiff is entitled to every reasonable inference of fact that the jury might draw from the evidence, and every relevant fact which the testimony tends to establish is to be treated as admitted by the defendant; when, tested by that rule, the plaintiff's testimony tends to make out a prima facie case, it is error to enter such judgment: Maynes v. Atwater, 88 Pa. 496.

2. The absence of a railing, or other guard, on the top of an abutment twelve feet high and extending four feet beyond the side of a bridge upon a township highway, the approach being so constructed that a foot traveler at night might unsuspectingly walk off the projection in attempting to go upon the bridge, is evidence of negligence on the part of the township.

3. Where the testimony, in an action against the township, tends to show the existence of such a pitfall, and that plaintiff, on a dark night and while endeavoring to follow the approach and enter the bridge, suddenly, for want of the protecting guard, without negligence, fell over the projection and was injured, an order to enter a compulsory nonsuit is error: Monongahela City v. Fischer, 111 Pa. 9, distinguished.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 413 January Term 1889, Sup. Ct.; court below, No. 23 January Term 1888, C. P.

On November 16, 1887, Thomas Corbalis brought trespass against the township of Newberry to recover damages for personal injuries, alleged to have resulted from the defendant's negligence. Issue.

At the trial on February 28, 1888, the following facts were shown upon the part of the plaintiff:

On the evening of December 26, 1885, the plaintiff started at about seven o'clock, to go from his boarding house in the township of Newberry into the unincorporated village of York Haven. His way lay upon and along a public road, which

crossed a creek, at the northern end of the village, by a bridge sixteen feet wide.

The ends of the bridge rested upon stone abutments, twelve feet high. The faces of the abutments extended beyond the width of the bridge. At the northeast corner of the bridge, the abutment, upon which it rested, extended four feet beyond the side of the superstructure. At the eastern end of this abutment was the abutment of a railroad bridge, by which the track of the Northern Central railway was carried across the same stream. The top of that part of the abutment which lay between the railroad bridge and the superstructure of the township bridge, was on a level with the approach to the latter, and the ground upon the northern side of the abutment, and contiguous to it, was all on the same level, from the centre of the traveled roadway outwards. There was no guard-rail or other barrier at the side of the entrance upon the bridge, to prevent travelers from going over the uncovered part of the abutment.

The plaintiff was proceeding along the township road towards the south. The evening was very dark and when he reached the approach to the bridge, being unable to see, he missed his way, and, instead of entering the bridge, unconsciously walked to the left of it, stepped over the unprotected part of the abutment, and fell a perpendicular distance of twelve feet to the rocky bed of the stream, receiving in his fall very severe injuries.

The testimony for the plaintiff showed that the road upon which he was traveling had formerly been a turnpike road but was abandoned as such, and that the road supervisors of the township, after its abandonment, had done work upon the road and the bridge. It was not shown that the supervisors had ever done any work upon the ground northeast of the bridge, immediately contiguous to the uncovered portion of the abutment.

The plaintiff called Rufus Bostic, and made offers to show by him that the witness, and another person, at different times near the time of the plaintiff's accident, had fallen over other corners of the bridge, which were likewise unguarded. The offers were objected to and rejected by the court; exceptions.[2] [3]

### Opinion of Court below.

At the close of the plaintiff's testimony the defendant's counsel moved the court for the entry of a judgment of nonsuit. The court, LATIMER, J., after argument and after consideration of the motion, directed a nonsuit to be entered, filing the following opinion:

It is impossible to distinguish this case in principle from Monongahela City v. Fischer, 111 Pa. 9. The facts are in some respects very similar.

In that case, a foot passenger groped his way on a dark night across a bridge over a culvert. In doing so he fell over the entirely unguarded side of a dangerous approach to the bridge into a ditch, and was injured. Unlike this case, the accident was proved to have occurred within the limits of the highway; and it was held not to be negligence in the municipal corporation, charged with the duty of keeping the highways in order, to permit the approach to the bridge, within the highway though not within the traveled portion, to remain unprotected by a rail or other device to prevent travelers from falling over, as the plaintiff in that case did.

In the case at bar, it is not shown, save as a matter of conjecture, unsupported by any competent legal evidence, that the place where the accident occurred was within the limits of the highway at all. Nor is it shown whether the four feet, intervening between the bridge and the railroad, was within the railroad company's appropriation or right of way, or whether it was private property.

But if, as decided in the case above cited, it was not negligence in the city, charged with the maintenance of the highway, to leave unprotected a dangerous approach constructed by the city and within the lines of the highway, it cannot be held negligence in this defendant to leave unprotected the place where this accident happened, which is not shown to be in the highway at all. The duties and responsibilities of the township, in the maintenance and repair of an abandoned turnpike, are by no means commensurate with those formerly vesting in the turnpike company: Commonwealth v. Philadelphia, 11 W. N. 485.

That the plaintiff has been seriously injured; that he is entitled to the sympathy and pity of all is undoubted, but we must not permit our sympathy to lead us to disregard well settled rules of law.

Arguments.

Judgment of nonsuit having been entered, the plaintiff took this appeal assigning for error:

1. The refusal to set aside the judgment.

2, 3. The overruling of plaintiff's offers.[2] [3]

*Mr. Charles A. Hawkins* (with him *Mr. H. H. McClune*), for the appellant:

1. On a motion for a nonsuit the plaintiff is entitled to every inference of fact which the jury might have drawn from the evidence, and the defendant is to be' considered as admitting every fact which the evidence tends to prove: Maynes v. Atwater, 88 Pa. 496. The evidence admitted for the plaintiff clearly established that the defendant had upon its public highway before and at the time of this accident, a dangerous open space, directly on the line of the road, exposing a traveler who approached the bridge at night from the north to the risk of injury. To diverge but a few inches to the left would expose him to a perpendicular fall of twelve feet upon the rocks below. That an increase in the height of the abutment, or the placing of a guard-rail over it, would have prevented such a fall, is manifest. There is not an intimation that the plaintiff was guilty of contributory negligence, when he unsuspectingly walked into this man-trap.

2. It is the duty of supervisors to maintain bridges constructed in the usual and ordinary way, and to place upon and about them safeguards against such accidents to travelers, as, in the exercise of ordinary care, they may and ought to foresee as likely to happen: §§ 6, 31, act of June 13, 1836, P. L. 556; Easton Bor. v. Neff, 102 Pa. 474; Burrell Tp. v. Uncapher, 117 Pa. 353; Scott Tp. v. Montgomery, 95 Pa. 444; Millcreek Tp. v. Perry, 10 Cent. R. 299; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276; Lower Windsor Tp. v. Gemmill, 16 W. N. 265; Hey v. Philadelphia, 81 Pa. 44. These cases do not conflict with Monongahela City v. Fischer, 111 Pa. 9, for it does not follow from the doctrine of that case that places may be left ungarded, upon and near to a road, that are manifestly dangerous to the use of the part prepared for travel. Moreover, there is a marked difference between a sloping bank, four feet high, at the side of a road, and a perpendicular abutment across it, twelve feet high.

3. As to the fact that the accident happened on the highway, what better proof could there be than to show that it occurred over one of the abutments of the bridge? Are they not a part of the bridge, and is not the bridge a part of the highway? It mattered not whether the place of the accident was within the appropriation of the railroad company or not; it was still being used for the bridge abutments, which are a part of the highway, and as long as it was so used the township was responsible for its condition: Aston v. McClure, 102 Pa. 322; Newlin Tp. v. Davis, 77 Pa. 317; Lower Windsor Tp. v. Gemmill, 16 W. N. 265. Our offers of evidence should have been received. Proof of other similar accidents is admissible: Easton Bor. v. Neff, 102 Pa. 474; and evidence of notice to the supervisors of the dangerous condition of a public road was admitted in Burrell Tp. v. Uncapher, 117 Pa. 353, although the notice did not apply to the identical place where the accident happened. Accidents at other corners of the bridge were therefore proper evidence.

*Mr. H. L. Fisher* (with him *Mr. John W. Bittenger*), for the appellee:

1. By the plaintiff's own evidence he is shown to have been guilty of gross negligence. Contributory negligence in any degree will prevent a recovery: Monongahela City v. Fischer, 111 Pa. 9. The plaintiff does not pretend to say that he walked carefully, or used due care to avoid injury. Instead of walking on the bridge, he walked aside and into the unguarded ditch which he knew was there, and that without a light and without feeling his way, or in any manner trying to avoid the danger, as was done by Fischer. The case is a much weaker one for the plaintiff than Monongahela City v. Fischer, and the nonsuit was proper upon the ground of contributory negligence.

2. Upon the question of the defendant's negligence, the facts are remarkably similar to those in Monongahela City v. Fischer; indeed, almost identical, except that this was the case of a common country road, and that of a street in the outlying portion of a city. That case was therefore more favorable to the plaintiff than this, and its doctrine applies to and more than covers the question raised as to the measure of responsi-

Opinion of the Court.

bility of this defendant. Besides, the court was fully sustained, by the lack of proof at all material points, in declaring that it was not shown by any competent legal evidence that the place of the accident was within the limits of the highway at all.

3. Assuming that the plaintiff was injured within the highway, the duties and liabilities of the township as to the maintenance and repair of the abandoned turnpike were not commensurate with those formerly resting on the turnpike company: Commonwealth v. Philadelphia, 11 W. N. 485. To say nothing of the obscurity and absurdity of the plaintiff's offers, they were irrelevant because there was an utter lack of proof that the injury to the plaintiff occurred on the road complained of, and for the further reason that accidents to other persons at other corners of the bridge, without any evidence as to the proximate cause of their mishaps, could not tend to prove that the plaintiff's injury was caused by the defendant's negligence.

OPINION, MR. JUSTICE STERRETT:

In reviewing judgments of nonsuit, the well-settled rule is that the plaintiff is entitled to every reasonable inference of fact that the jury might have drawn from the evidence. Every relevant fact which it tends to prove is to be considered as admitted by the defendant: Maynes v. Atwater, 88 Pa. 496.

Tested by that rule, the evidence was quite sufficient to carry the case to the jury on questions of fact which, if determined in favor of plaintiff, would have warranted a verdict in his favor. It was claimed by him that the abutment of the bridge, over which he fell and sustained the injury complained of, was within the lines of a public highway which the township defendant was bound to maintain in a condition reasonably safe for those who had occasion to use it and the bridge which formed part of the highway; that at the northeast corner of the bridge, the point where he fell over, the top of the abutment was about on the same level as the floor of the bridge and the approach thereto, and extended several feet beyond the side of the bridge, thus making the approach to the abutment several feet wider than the bridge; that the portion of the abutment and approach thereto, extending beyond the side of the bridge, was negligently left open, without any guard-rail

Opinion of the Court.

or other mode of warning travelers of the danger; that, when about to cross the bridge, on a dark night, he was misled, and for want of a guard-rail, or other suitable barrier, he fell over the projecting portion of the abutment, and perpendicularly down, a distance of about twelve feet, upon the rocky bed of the stream, and was thus severely injured, without any negligence on his part.

Without referring specially to the evidence, it is sufficient to say that it tended to sustain the allegations of the plaintiff. It tended to show the existence, within the lines of the highway, of a dangerous pitfall, which should have been properly guarded, and that for want of such guard plaintiff was injured. It should therefore have been submitted to the jury with proper instructions as to the duty of the township authorities, as well as plaintiff himself. In actions on the case for negligence, such as is alleged in this case, if the plaintiff's evidence tends to make out a prima facie case, it is error to enter a judgment of nonsuit. To do so is an invasion of the province of the jury, whose duty, as a general rule, is to weigh the evidence and determine the facts.

The learned judge of the Common Pleas appears to have thought that the case was ruled by Monongahela City v. Fischer, 111 Pa. 9; but in that conclusion we think he was mistaken. The case referred to was a very close one, on the controlling question whether the evidence warranted its submission to the jury or not, and depended largely on its own peculiar facts, none of which were disputed. From the report of the case, it appears that the planked culvert, adjacent to the place where the accident occurred, and the approaches thereto, " were well constructed and reasonably safe." The latter were about fourteen feet wide at the edge of the planks, and widened as they receded from the culvert. " The sides of those approaches sloped down from the roadway to the ground at either side. Three of these side slopes were but slightly elevated. The fourth, on the river side of the roadway and east of the culvert, was between three and four feet at the highest point, next the culvert wall, and gradually diminished as it reached towards the level ground. This construction was required there because a water-way existed along that side of the road, which had to be carried into the culvert

within the lines of the highway, and for which provision was made by an opening in the culvert wall." In that case, also, the plaintiff's own account of how he came to go over the embankment shows that it happened, not in his effort to keep on the traveled roadway, but in endeavoring to cross the same in search of an adjacent footpath. He proceeded, as he testified, " by the right-hand slope of the western approach to the culvert, about twenty steps, and thence diagonally across the culvert from the right-hand side to the left-hand side, intending to leave the wagon road, and take the footpath by Stewart's fence." Instead of finding the path he was in search of, he " got over the embankment or steep grade." That wsa the plaintiff's own account of the manner in which he was injured.

In the case at bar, the unguarded precipice, instead of being a gently sloping embankment of three or four feet, such as are not uncommon on country highways, was an actual pitfall, nearly perpendicular, and about twelve feet high; and the injured party, instead of. intentionally crossing the highway diagonally in search of a diverging footpath, was endeavoring to follow the beaten highway, and had every reason to believe he was doing so, until he suddenly went over the unguarded precipice, down on to the rocky bed of the stream below. The facts of the two cases, as indicated by the evidence, are quite different. In the case referred to, the plaintiff's own account of his injury shows that he could and would have traveled the highway in safety, if he had not attempted to cross it diagonally, on a dark night, in search of a diverging footpath. This alone was enough to preclude him from recovering damages from the city. In the case before us, there appears to be nothing on which to base a judgment of nonsuit, or binding instructions to find for defendant.

Judgment reversed, and a procedendo awarded.