JOHN DALTON v. UPPER TYRONE TP.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 14, 1890—Decided October 6, 1890.

In an action against a township, to recover damages for injuries received by the plaintiff, in falling over the abutment of a bridge unguarded by a railing, there being submissible evidence that the township was chargeable with the care of the approach to the bridge, being a substituted highway constructed by a railroad company, it was error to withdraw the facts from the jury, and to direct a verdict for the defendant.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 398 January Term 1890, Sup. Ct.; court below, No. 328 June Term 1888, C. P.

On May 29, 1888, John Dalton brought trespass against Upper Tyrone township, to recover damages for injuries sustained by falling over the bank of Jacob's creek from a public highway. Issue.

At the trial on May 20, 1890, it was shown by the plaintiff that, early on the morning of October 11, 1885, before daylight, he was going to his work along a highway known as Brown street, leading to a bridge over Jacob's creek. The road or street approached the bridge nearly at right angles and was on a level therewith. The bridge was about sixteen feet wide, and rested on abutments from the water's edge about twelve feet high. The plaintiff, mistaken in the direction he was walking, missed the bridge, walked over the abutment and

Charge of Court below.

received severe injuries.  It was claimed by the plaintiff that the approach to the bridge on the Fayette side, where the accident occurred, was wider than the bridge, and that it was negligence in the defendant not to have the abutments guarded.

At the close of the testimony, the plaintiff requested the court to charge, inter alia:

1. That if the jury find that the place where the accident occurred was part of the public highway, and that such part was so dangerous, by reason of its proximity to a precipice, that common prudence required extra precaution in order to secure safety to travelers, the township was bound to use such precaution, and the omission to do so was negligence.[1]

The court, EWING, J., made no specific answer to the point, but instructed the jury in part as follows:

According to the evidence, before the Mt. Pleasant railroad was constructed there used to be a road running up on the Fayette county side of Jacob's creek, which was occupied by that railroad company in their construction of the road.   There was leading down to that road, and at the point where Brown street now strikes the Baltimore & Ohio railroad, which now controls the Mt. Pleasant & Broadford railroad, a country road, which was subsequently vacated and supplied by what is now called Brown street; and, according to the records of the location of that road, or the street that has been called Brown street, it ended at a post in the line of this old road that used to run up along Jacob's creek, and was taken by the Baltimore & Ohio or the Mt. Pleasant & Broadford Railroad Company, when its road was constructed.   So far as it extended, then, from a point back in the country to this point in the line of the old road, it was ordered to be opened thirty-three feet wide.   From there to the Fayette county end of this bridge, according to the witnesses, is a distance of thirty, forty or fifty feet,—I believe they varied in their testimony as to the exact distance,— in which distance the traveled road crosses the Baltimore & Ohio or Mt. Pleasant & Broadford tracks to get to that bridge. Because of their having taken that old road that ran up along the creek, it appears in the testimony of Mr. Tinstman, who was at that time the president of the Mt. Pleasant & Broadford Railroad company, they built this bridge across Jacob's

Charge of Court below.

creek, the original structure, to furnish parties who used to go up this old road which they had taken, and across the bridge at the old mill or distillery, a way to cross Jacob's creek to the Westmoreland county side, and allowed the public to cross their tracks at that place and go on to this bridge and across the creek.

Now it may well be, that, having supplied a way for getting across that creek there, by the construction of this bridge, then the township became liable for the maintenance of that road, and possibly also, for the purposes of this case, they are absolutely liable for the care of that bridge; at least Upper Tyrone township, and the corresponding township on the Westmoreland county side. [But there is no evidence in the case to show that so far as the roadway from the end of Brown street to the Fayette county end of the bridge was concerned, it was of any greater width than the bridge itself.] [2] The contention of the plaintiff in this case is, that that roadway must be assumed to be the same width as Brown street which terminates at that place in the old road. But that is an assumption we cannot make, and there is no evidence that it was of less width. And, proceeding on that assumption, [the plaintiff claims that it was the duty of the township to see that the roadway was constructed of the same width as Brown street, or else that guards should be placed on each side of the bridge so as to make a barrier there, including the bridge, of the width of Brown street, thirty-three feet; and that if the plaintiff, in going along there on this dark morning, kept within the lines of Brown street, extended to the creek there, and in doing so missed this bridge by no fault of his own, and received these injuries, the township is liable. Well, in the absence of any testimony going to show that the distance between the end of Brown street and the Fayette county end of the bridge is of any greater width than the bridge itself, I cannot so instruct you.] [3]

And, in addition to that, [according to the decisions of the Supreme Court, it is not incumbent upon the township, admitting its liability in other respects, to maintain any barriers at the side of the bridge there, to take up any additional width, even if the road had been admitted and proven to be thirty-three feet wide at that point.] [4] But they have only to maintain a sufficient roadway there, to enable people to travel over

Opinion of the Court.

the creek, that is reasonably safe.   I don't think there is any liability on the part of the township in this case, however much we may deplore the injury suffered by the plaintiff here and consequent therefrom.   [Consequently, I instruct you to render a verdict for the defendant.] [5]

The jury returned a verdict for the defendant.   Judgment having been entered, the plaintiff took this appeal, specifying that the court erred:

1. In refusing the plaintiff's point.[1]

2–5. In the portions of the charge embraced in [    ] [2 to 5]

*Mr. Edward Campbell* (with him *Mr. H. L. Robinson*), for the appellant.

Counsel cited: Newlin Tp. v. Davis, 77 Pa. 317; Mill Creek Tp. v. Perry, 10 Cent. R. 299; Hey v. Philadelphia, 81 Pa. 44; Burrell Tp. v. Uncapher, 117 Pa. 363; Plymouth Tp. v. Graver, 125 Pa. 24; Jackson Tp. v. Wagner, 127 Pa. 184; Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276.

*Mr. S. L. Mestrezat* (with him *Mr. T. B. Searight*), for the appellee.

Counsel cited: Scranton City v. Hill, 102 Pa. 381; South Easton Bor. v. Reinhart, 13 W. N. 389; Monongahela City v. Fischer, 111 Pa. 9.

OPINION, MR. JUSTICE STERRETT:

On behalf of plaintiff, the court was requested to charge, as recited in the first specification, that, if the place where the accident occurred was a part of the highway, and " was so dangerous, by reason of its proximity to a precipice, that common prudence required extra precaution in order to secure safety to travelers, the township was bound to use such precaution, and the omission to do so was negligence."   The evidence, tending to prove the facts suggested in that proposition, was sufficient to have warranted its affirmance; but, as complained of in the fifth specification, the learned judge virtually withdrew every question of fact from the jury, and directed them to render a verdict for defendant.   In that we think there was error: Corbalis v. Newberry Tp., 132 Pa. 9.   In that case the evidence tended to prove a state of facts similar,

in some respects, to those of the present case. It was there held that the evidence should have been submitted to the jury, with proper instructions as to the duty of the township authorities, as well as of the plaintiff himself.

The learned judge also erred in saying that, so far as the roadway from the end of Brown street to the bridge is concerned, there is no evidence to show that it was of any greater width than the bridge itself. The evidence tended to show that Brown street formerly terminated in a public road, running up the bank of Jacob's creek on the Fayette county side, and crossing the same a short distance above the present bridge; that the bridge, which is substantially in the line of Brown street extended, was built there because, in 1870 or 1871, said public road was appropriated by the Mt. Pleasant & Broadford Railroad Company, and the bridge, together with the extension of Brown street across the railroad to connect therewith, was substituted for the former public road and crossing. One of the witnesses, who was president of the railroad company when the road was constructed, testified that the bridge was built, under a contract with the company, in order that the people might cross over to the other road connecting therewith on the opposite side of the creek; that, when the bridge was completed, it " was taken off the hands of the railroad company" by the commissioners of Fayette county, and thereafter the company had nothing more to do with it. It was also shown that the approach to the bridge was filled up so as to put it in proper condition for public travel. One of the supervisors for 1882 testified: " I leveled the ground between the bridge and railroad. . . . . The bridge is now about on a level with the railroad, or probably a little higher than the railroad." From this and other evidence, to which special reference is unnecessary, the jury would have been warranted in finding that the bridge and extension of Brown street, to connect with it, were intended to supply the former public road and crossing, and were accepted as a substitute therefor by the county commissioners; in other words, that the railroad company supplied, as it was bound to do, a public highway in lieu of the one it appropriated for the bed of its road. If that be so, it was the duty of the township authorities to see that the substituted highway, including the bridge and approach to

Syllabus.

it, were kept in such condition as to be reasonably safe for public travel. If they failed to do so, and the plaintiff, without any fault of his own, fell over the unguarded embankment, and was injured in consequence of their neglect, the township is liable. If authority for this proposition be needed, it may be found in Burrell Tp. v. Uncapher, 117 Pa. 353, 354; Plymouth Tp. v. Graver, 125 Pa. 24; Corbalis v. Newberry Tp., 132 Pa. 9.

The case depended on questions of fact presented by the evidence, and those questions were exclusively for the determination of the jury. For that purpose the evidence should have been submitted to them with proper instructions. The specifications of error are sustained.

> Judgment reversed, and a venire facias de novo awarded.

